IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

ROLAND BLUFORD,

                      Plaintiff,                Case No. 3:06 CV 2853

    -vs-

                                                 MEMORANDUM   OPINION

STUART HUDSON, Warden,

                      Defendant.

KATZ, J.

      This case involves Petitioner Roland Bluford's *pro se* petition for writ of habeas corpus. This matter is before the Court on the Report and Recommendation ("R&R") of Magistrate Judge Vernelis K. Armstrong (Doc. 16), and Petitioner's objections to the R&R (Doc. 19).  The Magistrate Judge recommends that the Court deny Petitioner's petition for writ of habeas corpus. (Doc. 16 at 14).  For the reasons below, the Court adopts the Magistrate's R&R in full. Petitioner's writ for habeas relief is hereby denied.

**I. Background**

      The Magistrate Judge previously filed a R&R granting Petitioner's Motion for Evidentiary Hearing.  (Doc. 9).  Subsequently, Respondent filed a Motion for Reconsideration asking the court to deny the request for evidentiary hearing and overrule Petitioner's claim that he is entitled to tolling based on a claim of actual innocence.  (Doc. 13 at 1).  After reconsideration, the Magistrate Judge recommends that the previous recommendation for an evidentiary hearing be withdrawn and that Petitioner's request for a writ be denied as time-barred.  (Doc. 16 at 1-2).

      The Court hereby adopts the Magistrate's description of the facts and procedure of this case as provided in the R&R, and as follows:

**FACTUAL BACKGROUND**

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), in a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to a judgment in state court, the factual findings made by a state court in the direct appeal are presumed to be correct. *Keith v. Mitchell*, 455 F. 3d 662, 666 (6th Cir. 2006) (*citing* 28 U. S. C. § 2254 (e) (1) (2006)).

The victim testified Petitioner was her mother's boyfriend and he moved into her family's apartment in 1990, when she was nine years old. The victim stated her mother worked two jobs so Petitioner would be left alone with her and her five-year-old sister on many occasions. She said the first time Petitioner touched her was during the day and he rubbed his hand over her vagina a couple of times. The victim said the next time Petitioner touched her was the first night they spent in their new house. She said there was no furniture in the new house and it was just Petitioner, her, and her sister. The victim stated Petitioner "leaned up and put his finger in my pants and my panties and put it inside my vagina." She said she did not inform on Petitioner because she was afraid of him. The victim testified another incident occurred when she was in her mother's bedroom. She said Petitioner put "his finger inside of my vagina, then it was his mouth." The last incident the victim discussed took place on her mother's bedroom floor. She said Petitioner "took his penis out, out of his boxer shorts, and I was laying on the floor and he put it up against my vagina and it wouldn't go in." The victim again stated she did not tell anyone about these incidents because she was afraid of Petitioner. She testified she was afraid "he was going to try to hurt her [mother] or my sister."

Petitioner testified on his own behalf and stated he lived with the victim's mother from August 1990 to November 1991, the time at issue. Petitioner stated he never touched the victim's vagina, never pulled her pants down, and never presented his penis to her mouth. He stated he thought he had a good relationship with the victim and her sister. Furthermore, Petitioner said he never disciplined the two girls and knew of no reason why the victim would make up such a story. *State v. Bluford*, 1999 WL 1129585, *1 (1999).

**PROCEDURAL BACKGROUND**

*Direct Appeal*

During the January 1998 term, Petitioner was indicted by the grand jurors in Cuyahoga County, Ohio, on three counts of rape of a minor (Docket No. 7, Exhibits 1 & 2). On August 11, 1998, Petitioner was found guilty as charged in the indictment[3]. Judge Eileen A. Gallagher imposed a prison term of life as to each

---

[3] Petitioner claims that the indictment was amended at the commencement of trial to reflect the

count, to be served consecutively at the Lorain County Correctional Institution (Docket No. 7, Exhibit 2).

The Court of Appeals for the Eighth Appellate District in Cuyahoga County, Ohio, affirmed Judge Gallagher's judgment on December 9, 1999[4] (Docket No 7, Exhibit 3 & Attachment to Exhibit 4). On January 20, 2000, Petitioner filed a memorandum in support of jurisdiction in the Ohio Supreme Court (Docket No. 7, Exhibit 4). The State of Ohio filed an opposition[5] (Docket No. 7, Exhibits 4 & 5). The Supreme Court of Ohio denied leave to appeal and dismissed the appeal on April 19, 2000 (Docket No. 7, Exhibit 6).

### *Post Conviction Relief*

Petitioner filed a timely application to reopen his conviction in the Court of Appeals for the Eighth Appellate District. The application to reopen pursuant to APP. R. 26(B) was denied on May 31, 2000, by the Court of Appeals[6] (Docket No. 7, Exhibit 7). On July 7, 2000, Petitioner filed a memorandum in support of jurisdiction in the Ohio Supreme Court and the State of Ohio filed an opposition (Docket No. 7, Exhibits 8 & 10). The Supreme Court of Ohio dismissed the appeal as not involving any substantial constitutional question on August 30, 2000 (Docket No. 7, Exhibit 9).

Petitioner filed an application for post-conviction relief on April 11, 2000, in the Cuyahoga County, Ohio, Court of Common Pleas to which the State of Ohio filed a motion to dismiss[7] (Docket No. 7, Exhibits 11 & 12). Judge Gallagher dismissed the petition on May 19, 2000 (Docket No. 7, Exhibit 13). Petitioner filed a motion for proposed findings of fact and conclusions of law on October 12, 2000 (Docket No. 42, p. 3/6). On February 21, 2001, Judge Gallagher made findings of fact and conclusions of law (Docket No. 7, Exhibit 14). Petitioner filed a notice of

---

victims age of 9 to 10 years during the time of the offenses.

[4] Petitioner presented four assignments of error. First, he was denied the right to effective assistance of counsel. Second, the trial court erred in instructing the jury that force was an element of the offense of rape of a minor. Third, the trial court erred by denying Petitioner's motion for acquittal. Fourth, the jury's verdict was not supported by sufficient probative evidence.

[5] Petitioner presented four assignments of error. First, trial counsel was ineffective. Second, the trial court erred in its jury instruction. Third, there was insufficient evidence of force. Fourth, there was a lack of sufficient evidence to convict Petitioner of rape.

[6] Petitioner alleges that he was deprived of the effective assistance of appellate counsel.

[7] Petitioner argued that on January 10, 2000, he received exculpatory evidence from his third-party representative that could not have been discovered prior to or during his trial.

appeal in the court of appeals on March 20, 2001, and a brief on April 9, 2001[8] (Docket No. 7, Exhibits 15 & 16). The Court of Appeals for the Eighth Appellate District, *sua sponte*, dismissed Petitioner's application for post-conviction relief on November 13, 2001 (Docket No. 7, Exhibit 18).

Petitioner filed motions for a new trial and for an order acknowledging that he was unavoidably prevented from discovery on September 30, 2002, in the Court of Common Pleas of Cuyahoga County, Ohio[9] (Docket No. 7, Exhibit 19 and Attachment p. 17 of 40). Judge Gallagher denied both motions on October 7, 2002 (Docket No. 7, Exhibit 20). Petitioner filed a motion to correct the order of October 7 on December 30, 2002 (Docket No. 7, Exhibit 21). Judge Gallagher denied the motion to correct on June 10, 2003 (Docket No. 7, Exhibit 22). Petitioner appealed the denial on or about July 18, 2003, and the State of Ohio filed an opposition on August 12, 2003[10] (Docket No. 7, Exhibits 23 & 24). The court of appeals affirmed Judge Gallagher's denial of the motion to correct on December 1, 2003 (Docket No. 7, Exhibit 25).

On December 16, 2003, Petitioner filed a motion for delayed appeal on December 16, 2003, in the court of appeals[11] (Docket No. 7, Exhibit 26). The motion for delayed appeal was granted on January 12, 2004 (Docket No. 7, Exhibit 27). Both parties filed briefs in support of their positions[12] (Docket No. Exhibits 28 & 29). On August 5, 2004, the court of appeals overruled Petitioner's assignment of error in the motion for delayed appeal and affirmed his conviction (Docket No. 7, Exhibit 30). On September 3, 2004, Petitioner filed a memorandum in support of jurisdiction in the Ohio Supreme Court and the State of Ohio filed a response (Docket No. 7, Exhibits 31 & 32). The Supreme Court of Ohio dismissed the appeal on December 1, 2004 (Docket No. 7, Exhibit 33).

---

[8] In his brief, Petitioner alleged that the trial court erred in failing to grant his request for an evidentiary hearing in light of his presentation of a prima facie case for ineffective assistance of counsel.

[9] Petitioner argued that he had obtained evidence of prosecutorial misconduct.

[10] Petitioner alleged simply that the trial court denied his right to due process by denying his request for reconsideration RULE 60.

[11] The reason for delay was the trial court's failure to timely notify him of the dismissal of his new trial motion.

[12] Petitioner claimed that the trial court erred in not granting his motion for a new trial once he made a prima facie case for prosecutorial misconduct and newly discovered evidence.

4

>On February 25, 2005, Petitioner filed a motion for post-conviction relief in the court of common pleas[13] (Docket No. 7, Exhibit 34). The State of Ohio filed a response (Docket No. 7 Exhibits 34 & 35). Judge Gallagher made findings of fact and conclusions of law, dismissing Petitioner's motion for post conviction relief on June 13, 2005 (Docket No. 7, Exhibit 36). Petitioner filed a merit brief in the court of appeals on July 11, 2005[14] (Docket No. 7, Exhibit 37). The State of Ohio lodged a response on July 26, 2005 (Docket No 7, Exhibit 38). On May 15, 2006, the court of appeals affirmed the judgment of the trial court (Docket No 7, Exhibit 39). Petitioner appealed the judgment of the court of appeals to the Ohio Supreme Court[15] (Docket No. 7, Exhibit 40). On August 23, 2006, the Supreme Court of Ohio denied Petitioner leave to appeal and dismissed the appeal (Docket No. 7, Exhibit 41).

(Doc. 9 at 2-6).

The Magistrate received the case under Local Rule 72.2(b)(2) and recommended denying the writ of habeas corpus. This Court conducts a *de novo* review of the Magistrate's R & R. 28 U.S.C. § 636(b)(1)(C); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001).

**II. Jurisdiction**

The AEDPA permits jurisdiction to a federal court to consider a petition for a writ of habeas corpus only when the state court's adjudication of a person placed the person "in custody in violation of the Constitution or laws or treaties of the United States." § 2254(a). Here, Petitioner is in custody of the Mansfield Correctional Institution in Mansfield, Ohio. (Doc. 1). Also, Petitioner alleges that the trial court violated his rights under the Sixth and Fourteenth

---

[13] In this motion, Petitioner reiterated that he had acquired new evidence that his conviction was the result of ineffective assistance of counsel.

[14] Petitioner claims that the trial court erred in failing to order an evidentiary hearing after he made a prima facie case for ineffective assistance of counsel.

[15] Petitioner alleged that the trial court erred in failing to grant him an evidentiary hearing after he made a prima facie case for ineffective assistance of counsel.

Amendments of the United States Constitution. Therefore, the AEDPA provides jurisdiction to this Court to issue a habeas writ.

**III. Standard of review**

The AEDPA governs federal habeas corpus when the state court adjudicates the claims on the merits. § 2254(d). The AEDPA establishes two ways in which a federal court may issue a writ. First, a federal court may issue a writ if the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). Second, a federal court may issue a writ if the state court's decision resulted in an unreasonable determination of facts. § 2254(d)(2).

Under section 2254(d)(1), the term "clearly established federal law" refers to the Supreme Court's holdings. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state courts' decision is "contrary to" the Supreme Court when either the decision contradicts the Supreme Court's holdings or it "'confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from this precedent.'" *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam). A state court's decision unreasonably applies Supreme Court holdings "'if the state court identifies the correct governing legal principle from the Supreme Court but unreasonably applies that principle to the facts' of petitioner's case." *Id*. (quoting *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)).

**IV. Discussion**

6

The Magistrate's R&R recommends that the Court deny Bluford's petition for writ of habeas corpus. (Doc. 16). Bluford objects to the Magistrate's R&R. Petitioner argues that his requests for post-conviction relief tolled the AEDPA statute and that he is actually innocent.

As explained above, the Magistrate Judge initially agreed with Petitioner that the statute was tolled based on his claim for actual innocence and the Magistrate recommended that an evidentiary hearing be scheduled. (Doc. 9). Respondent filed a motion for reconsideration. (Doc. 13). Although Respondent acknowledged that the Sixth Circuit has held that a petitioner who misses the deadline may still maintain a viable habeas action if the court decides that equitable tolling is appropriate, *Allen v. Yukins,* 366 F.3d 396 (6th Cir. 2004), Respondent argued that the Magistrate incorrectly determined the inquiry as to whether Petition "can present new evidence which undermines the court's confidence in the outcome of the trial." *Souter v. Jones*, 395 F.3d 577, 600 (6th Cir. 2005). After reconsideration, the Magistrate recommends, and this Court agrees, that substantial evidence supports the jury's verdict and that a rational juror reviewing such evidence would find Petitioner guilty beyond a reasonable doubt.

### A. Statute of Limitations

Under 28 U.S.C. § 2244(d)(1), "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." *See also Owens v. Stine,* 27 Fed.Appx. 351, 353 (6th Cir. 2001). The limitation period runs from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

7

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A-D). Specifically, the limitations period is tolled while a "properly filed" application for post-conviction relief or collateral review is pending in state court. *See* 28 U.S.C. § 2244(d)(2). An application is "properly filed" when its delivery and acceptance by the state court comply with the state laws and rules governing filings. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). Untimely motions are not "properly filed" and will not stop the one-year clock. *See id.* (examples of these laws and rules include "the time limits upon [petition's] delivery" to state court).

Here, the one year time period began on April 19, 2000, the day that the judgment became final by the conclusion of direct review or when the Ohio Supreme Court dismissed Petitioner's appeal. From April 19, 2000 - August 30, 2000, the statute of limitations was tolled during the pendency of Petitioner's motion for post-conviction relief. However, the statute was not tolled for the application for post-conviction relief filed on April 11, 2000, as its filing did not comport with state law. Specifically, it was not properly filed within 180 days afer the record was filed in the appellate court under Ohio Rev. Code § 2953.21(A)(2). Neither was the statute tolled for the second motion for post-conviction relief filed on February 25, 2002, as its filing also failed to comport with state law. Specifically, the motion was filed well past the 180 day statutory deadline pursuant to Ohio Rev. Code. § 2953.21(A)(2) and it failed to set forth the necessary facts for the court to consider an untimely petition.

Thus, the Court adopts the Magistrates conclusion that "[t]olling the statute for 42 days during the pendency of Petitioner's first motion for post-conviction relief does not provide the timing calculation required for a determination that the Writ was timely filed." (Doc. 16 at 11).

### B. Equitable Tolling and Actual Innocence

Although Petitioned did not timely file the Petition, in the Sixth Circuit a petitioner who misses the deadline may still maintain a viable habeas action if the court decides that equitable tolling is appropriate. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). Petitioner argues that he is entitled to equitable tolling based on newly discovered evidence that creates a credible claim of actual innocence.

The Sixth Circuit has recognized that "equitable tolling of the [one-year] statute of limitations based on a credible showing of actual innocence is appropriate." *Souter v. Jones*, 395 F.3d 577, 602 (6th Cir. 2005). Petitioner must overcome a stringent standard to establish a credible claim for actual innocence. To determine whether a petitioner has met the requirements for establishing a credible claim of actual innocence for purposes of equitable tolling, the Sixth Circuit applies the gateway actual-innocence standard announced by the Supreme Court in *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *see also Souter*, 395 F.3d at 588-590. If a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims . . . Thus, the threshold inquiry is 'whether new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial.'" *Souter*, 395 F.3d at 589-590 (citing *Schlup*, 513 U.S. at 316-317). To establish actual innocence, "a petitioner must

9

show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327. "Actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup*, 513 U.S. at 324.

Here, Petitioner claims that he was not provided with the police report that was taken of the victim who alleged she was attacked by Petitioner in 1992 or 1993 when she was 11 or 12 years old. Petitioner believes that this information contradicts the victim's trial testimony and if believed would impeach the credibility of the victim who testified that the offenses occurred when she was 9 or 10 years old. Rather than being characterized as new evidence to directly negate guilt, this evidence attempts to put forth non-exculpatory evidence that could have been used to impeach the victim's testimony. Impeachment evidence, as well as exculpatory evidence, falls within the *Brady* rule. *Brady v. Maryland*, 83 U.S. 1194, 1197-1197 (1963) (Prosecutor is not required to deliver his or her entire file to defense counsel but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial).

This Court agrees with the Magistrate's conclusion that "the impeachment evidence offered by Petitioner is insufficient to justify invoking the fundamental miscarriage of injustice exception to the procedural default rule." (Doc. 16 at 13); *see Whalen v. Randle*, 37 Fed. Appx. 113, 119 (6th Cir. 2002) (Petitioner failed to meet test establishing a *Brady* violation that would allow him to toll the one-year statute).

Bluford simply cannot establish a *Brady* violation. Where "a defendant 'knew or should have known the essential facts permitting him to take advantage of any exculpatory information,' or where the evidence is available . . . from another source," the government is under no duty to supply that information to the defense because in such cases there is really nothing for the government to disclose. *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998); *Byrd v. Collins*, 209 F.3d 486, 517 (6th Cir. 2000); *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991).

Here, Bluford states that he was not provided with the police report in this case. Bluford argues that this information contradicts the victim's trial testimony and, if believed, would impeach the credibility of the victim. However, even if Bluford did not have the actual police report, the state court record demonstrates that Bluford knew the essential information contained in the report. *See In re Byrd*, 269 F.3d 561 (6th Cir. 2001) (Petitioner's attacks on trial witness's credibility do not provide proof of actual innocence sufficient for the purposes of excusing procedural bar because although the government did not hand over requested documents, Petitioner had the affidavit of another witness that he could have used to attack the testimony); *see also Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005) (Sufficient proof of actual innocence claim when the following new evidence was presented: changed testimony of two key witnesses, the statements from a bottle manufacturer, additional evidence of the forensic scientist and police laboratory technician, and new photos).

First, the original indictment sets forth the dates of the offenses as August of 1992 to August of 1993. Additionally, the charges indicate that the victim was 11 years old at the time of the offenses. The State filed a bill of particulars which reiterated the dates of the offenses and the age of the victim as set forth above. Subsequently, "[a]fter discussions with the victim and her mother," the State filed a motion to amend the indictment and the bill of particulars stating that "the State of Ohio anticipates that the evidence will show that these offenses occurred between the

11

spring of 1991 and February 1992." Bluford acknowledges that the state "amended the indictment to reflect the victim's age as being 9 or 10 years old when this alleged crime occurred." (Doc. 8 at 8).

Second, at trial, a detective of the City of Warrensville Heights Police Department testified that the victim informed him that the criminal offenses occurred four to five years prior to the date she made her statement in 1997. (Tr. at 343, 347). Thus, the foregoing demonstrates that Bluford knew or should have known the essential facts permitting him to take advantage of this information.

Furthermore, the victim's inability to give an exact date for the criminal acts was brought out during the trial testimony of the victim. (Tr. at 246-48). The detective testified that the victim could not give an exact date. (Tr. at 347). The victim's mother also testified that the victim might not have been able to give the police the exact dates. (Tr. at 291-92). During closing arguments, Bluford's attorney reiterated to the jury that the victim was unable to tell her mother, the police officer, or the psychologist exactly when the criminal offenses occurred. (Tr. at 407-09).

**V. Conclusion**

For the above stated reasons, the findings and recommendations of the Magistrate are well taken and there are no legal points which would be arguable on their merits in an appeal of this case. Furthermore, the Court has determined sua sponte that no certificate of probable cause should issue in this case as any appeal would lack substantial merit. Bluford's petition for writ of habeas corpus is denied.

    S/ *David A. Katz*
    DAVID A. KATZ
    U. S. DISTRICT JUDGE